**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | No. 13 C 6456 (09 CR 316-2) |
| | ) | |
| v. | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **BERNARD FOSTER,** | ) | |
| | ) | |
| **Defendant-Movant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

On November 20, 2009, a jury convicted Foster of one count of knowingly and intentionally distributing at least five but fewer than fifty grams of crack cocaine, and three counts of knowingly and intentionally distributing fifty or more grams of crack cocaine. (*See* Verdict [Dkt. 94].)[1] The Court sentenced Foster to concurrent prison terms of 240 months. (*See* J. [Dkt. 147].) Foster appealed his conviction and sentence, which were affirmed. (*See United States v. Foster*, No. 11-3097 (7th Cir. Dec. 20, 2012) [Dkt. 188].) Foster now moves pursuant to 28 U.S.C. § 2255 to have his conviction and sentence vacated because he received ineffective assistance of counsel.

**Discussion**

Foster contends that his counsel provided ineffective assistance in a multitude of ways. To prevail on any of his claims, Foster must establish both that his attorneys' performance "fell below an objective standard of reasonableness," and that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Moreover, Foster must submit affidavits or other

---

[1]Unless otherwise noted, docket references are to *United States v. Foster*, No. 09 CR 316-2 (N.D. Ill.).

evidence, not simply reply on his own unsworn and uncorroborated assertions, to merit relief. *See United States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir. 1989) (rejecting ineffective assistance claim because defendant "offer[ed] no evidence, only bare allegations, that counsel failed to advise him [properly]").

Foster's first claim is that his counsel was ineffective during plea negotiations because they failed "to provide [him] with a fair and accurate assessment of his chances of being acquitted," and did not tell him that "tainted evidence" would be admitted during the trial or that the confidential informant ("CI") who made controlled buys of drugs from Foster would not have to testify. (§ 2255 Mot. at 3-4.) However, counsel had no way of knowing what the Court's evidentiary rulings would be or that the CI would, just days before trial, admit that he lied to government agents, and thus invoke his Fifth Amendment right not to testify. Counsels' lack of prescience does not make them ineffective. *See United States ex rel. Healey v. Cannon*, 553 F.2d 1052, 1057 (7th Cir. 1977) (stating that the Sixth Amendment does not require defense counsel "[to] correctly predict the admissibility of evidence or anticipate future judicial holdings.").

Foster also faults his counsel for failing to interview or depose the CI before trial. The record shows, however that defense counsel did ask to interview the CI, but the CI declined the request. (*See* PSR, Ex. N, Letter to CI from Boutros (Nov. 12, 2009) ("[T]he attorney for Bernard Foster . . . has requested the opportunity to interview you prior to trial. The decision of whether you want to be interviewed . . . is entirely yours."). Moreover, counsel would have needed the Court's permission to depose the CI, which would have been granted only if there were "exceptional circumstances," and doing so was "in the interest of justice." Fed. R. Crim. P.15(a). "Exceptional

circumstances exist when the prospective witness is unavailable for trial and the absence of his or her testimony would result in injustice due to the materiality of the testimony to the case." *United States v. Groos*, 616 F. Supp. 2d 777, 790 (N.D. Ill. 2008) (quotation omitted). Here, the CI was available to testify at trial, and thus not a candidate for deposition, until he asserted his Fifth Amendment rights just days before the trial started. Further, after he asserted his Fifth Amendment rights, the Court could not force the CI to testify either in a deposition or at trial. As a result, this ineffective assistance claim fails.

Foster also contends that his lawyers should have moved to suppress the evidence "obtained by the CI using flawed ATF procedures based on the 'fruit of the poisonous tree' doctrine." (§ 2255 Mot. at 4.) The 'fruit of the poisonous tree' doctrine prohibits the government from introducing evidence at trial that was obtained through violations of a defendant's constitutional rights. *See United States v. Ienco*, 182 F.3d 517, 526 (7th Cir. 1999). But Foster does not say, and the Court cannot see, how the government agents' use of a CI who, unbeknownst to them, was stealing some of the buy money they gave him, violated any of Foster's constitutional rights. Because there was no reason for counsel to move to suppress evidence obtained by the CI, their failure to do so does not make them constitutionally ineffective.

Foster's next claim is that counsel should have argued against the CI's invocation of the Fifth Amendment, and should have, at the Court's invitation, offered examples of testimony the CI could give that would not be cumulative or impeaching. Contrary to Foster's belief, the record establishes that defense counsel argued repeatedly and emphatically that the CI had waived his Fifth Amendment rights. (*See* R. at 17-26, 192-94, 356-65; Foster Mem. Supp. Testimony CI [Dkt. 76].)

3

Moreover, counsel did not offer examples of permissible testimony because there were none. The evidence against Foster was offered through the government agents who observed and recorded the CI's drug purchases from Foster. Thus, the CI's testimony about the same transactions would have been cumulative, and his testimony about stealing buy money and lying about it to the agents and grand jury would have been impeaching, neither of which is admissible. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence."); *United Sates v. Silva*, 71 F.3d 667, 670-71 (7th Cir. 1995) (stating that evidence impeaching the credibility of a CI who does not testify for the government is "irrelevant and . . . inadmissible"). There simply was no material evidence that the CI, and only the CI, could offer. Defense counsels' inability to change that fact, and the Court's rejection of their Fifth Amendment waiver argument, does not make their performance deficient.

Foster also contends that his lawyers should have argued that the recordings made by the CI were "testimonial" in nature, and thus their admission violated the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 53-59 (2004) (holding that the Confrontation Clause bars the admission of "testimonial" statements made out of court, including statements made during police interrogations, unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine him). But again, the record shows that defense counsel raised this argument, albeit unsuccessfully, both before this Court and the Seventh Circuit. (*See* Def.'s Consol. Resp. Gov't's Mots. Limine at 2-4 [Dkt. 59]; *United States v. Foster*, No. 11-3097, at 13-20 (7th Cir. Dec. 21, 2012 [Dkt. 188]).) Thus, counsel cannot be faulted for failing to raise it.

4

Counsels' next purported error was not impeaching Special Agent Mask with false statements he allegedly made to the grand jury. Specifically, Foster says Mask testified that on March 20, 2009, Foster sold the CI a semiautomatic pistol with serial number 951749, but that weapon was in fact recovered from a co-defendant's home two weeks later. (§ 2255 Mot. at 5.) Foster is correct about the substance of Mask's grand jury testimony. (*See* PSR, Ex. I, Grand Jury Tr. at 10-19.) But he offers nothing to support his unsworn assertion that the gun was actually found in co-defendant Gardner's home two weeks later. Because there is no evidence that Agent Mask gave false grand jury testimony, and thus that defense counsel could have impeached him with it at Foster's trial, this ineffective assistance claims fails. *See United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001) ("An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct.").

Foster also faults counsel for not calling witnesses to rebut the government's case. He does not, however, identify any witnesses that should have been called or describe what testimony they could have offered. Absent such evidence, Foster is not entitled to relief on this claim. *See Granada v. United States*, 51 F.3d 82, 85 (7th Cir. 1995) (stating that § 2255 movant had "not established prejudice from [counsel's] failure to call additional witnesses because he ha[d] not identified who these witnesses were or what their testimony would have been"); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim.") (footnotes omitted).

In addition, Foster says his lawyers should have argued that his sentence could not be enhanced because of a prior felony drug conviction and career offender status because the facts supporting the enhancements were not found by the jury to have been proved beyond a reasonable doubt. As support for this argument, Foster cites *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151 (2013), in which the Supreme Court held that "any fact that increases the mandatory minimum [sentence]" must "be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2155. However, the Court's holding does not apply to "the fact of a prior conviction," even those that support a career offender enhancement. *See id.* at 2160 n.1 (In *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."); *United States v. Boyce*, 742 F.3d 792, 7 (7th Cir. 2014) (rejecting challenge to career offender enhancement because "*Alleyne* . . . did not change the rule announced in *Almendarez-Torres* . . . that the fact of a prior conviction need not be alleged in the indictment or proven to a jury beyond a reasonable doubt"). In short, counsel was not ineffective for failing to make an argument contrary to existing law.

Foster also faults his lawyers for not accompanying him to his PSR interview. In this circuit, however, "PSR interviews are not critical stages in the proceedings where the presence of an attorney is required." *Hodges*, 259 F.3d at 660. Thus, Foster had no Sixth Amendment right to counsel, let alone effective counsel, at the PSR interview. *Id.*

Next, Foster argues that his lawyers failed to investigate and challenge his criminal history as set forth in PSR, specifically the assertion that he pleaded guilty to attempted aggravated battery

6

in an Indiana case, which qualified him as a career offender. Once again, however, the record contradicts Foster's claim. Defense counsel argued in a written memorandum and during the sentencing hearing that Foster denied pleading guilty in the Indiana case, and thus the conviction could not be a predicate for a career offender sentence enhancement. (*See* Def.'s Sentencing Mem. at 2-4 [Dkt. 127]; 8/1/11 Hr'g Tr. at 12-24 [Dkt. 161].) The fact that the Court was not persuaded by these arguments does not mean that counsels' performance was deficient.

Foster also faults his counsel for failing to effectively argue mitigation factors at sentencing. Specifically, Foster says that his lawyers should have asked for a Court-appointed mental health expert to "provide the Court with the necessary insight into [his] mental state," and should have emphasized the hardship his family would suffer during his incarceration. (§ 2255 Mot. at 9-10.) But there was no basis for counsel to seek a mental health expert as Foster denied that he had, or had ever been referred or treated for, any mental or emotional issues. (*See* PSR at 40-41); *see also* 18 U.S.C.§ 3006A(e) (authorizing courts to appoint experts for indigent criminal defendants only if such experts are "necessary for adequate representation"). Moreover, though counsel did not raise the hardship issue, Foster offers no evidence that his imprisonment will causes any greater hardship to his family than that which is suffered by every family that has a loved one in prison. Therefore, counsels' mitigation efforts were not defective.

Foster's next claim is that his counsel unreasonably failed to argue on appeal that the Indiana conviction was not a proper predicate for the career offender enhancement. Because he had been "unwavering in his denial" of this conviction, and the government did not produce "proper documentation" of it, Foster says there is no "legitimate reason" why counsel did not make this

7

argument on appeal. (§ 2255 Mot. at 11.) Once again, the factual basis for this claim is lacking. The Court's finding that Foster had been convicted in the Indiana case was based on an October 20, 2004 plea agreement, judgment of conviction and sentencing order signed by the presiding judge of the St. Joseph Superior Court, St. Joseph County, Indiana. (*See* 8/1/11 Hr'g Tr. at 16-19 [Dkt. 161].) When the Court asked defense counsel if she had "any basis for believing that [the order was] not an accurate and actual court record," she said the only basis for her belief that the document was not genuine was Foster's "lack of recollection of entering [into the plea agreement]." (*Id.* at 17.) "Beyond that," counsel said, "I agree with your Honor that it is evidence of the conviction." (*Id.*) Thus, contrary to Foster's assertion, the Court's finding that he had been convicted in the Indiana case was based on records from the Indiana state court.

Foster also says his lawyers were ineffective because they did not tell him that the Seventh Circuit had issued its decision in his case. Even if that were true, and Foster offers no evidence that it is, counsels' omission would only be actionable if it prejudiced him, *Strickland*, 466 U.S. at 687-88, and the record shows that it did not. The Seventh Circuit affirmed this Court's decision on December 12, 2012. (*See United States v. Foster*, No. 11-3097 (7th Cir. Dec. 20, 2012) [Dkt. 188].) By February 8, 2013, at the latest, Foster knew the appeal had been decided. (*See* § 2255 Mot., Att. C, Letter from Foster to Winslow (Feb. 8, 2013) ("I recently discovered that my appeal [was] . . . denied.") (emphasis omitted).) On that date, Foster still had forty days to file a petition for a writ of certiorari. *See* S. Ct. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case . . . entered by . . . a United States court of appeals . . . is timely when it is filed . . . within 90

days after entry of the judgment."). Consequently, even if Foster's counsel did not tell him about the appellate decision, he was not prejudiced by the omission.

Foster's last claim, that his lawyers should have filed a petition for a writ of certiorari with the Supreme Court, "is a non-starter." *Wyatt v. United States*, 574 F.3d 455, 459 (7th Cir. 2009). "[A] criminal defendant has no constitutional right to counsel to pursue a petition for a writ of certiorari," and thus no claim for ineffective assistance of counsel if his lawyer does not file one. *Id.*

## Conclusion

For the reasons set forth above, the Court denies Foster's 28 U.S.C. § 2255 motion and terminates this case. Moreover, because Foster has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.

**SO ORDERED.**  **ENTERED:** June 9, 2014

*Ronald A. Guzman*

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**